**F. L. BROWN, Plaintiff,**

v.

**CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, a corporation, Defendant.**

No. 13211–1.

United States District Court
W. D. Missouri, W. D.

Jan. 14, 1963.

Popham, Thompson, Popham, Trusty & Conway, Kansas City, Mo., for plaintiff.

Houts, James, Randall, Hogsett & McCanse, Kansas City, Mo., for defendant.

JOHN W. OLIVER, District Judge.

This case pends on defendant's motion for summary judgment. Plaintiff's petition for damages for libel, removed to this Court from the State court, alleged that "on or about November of 1959 the defendant and its agent and servant, acting in the course and scope of his employment, one Herbert Mueller, did maliciously defame the plaintiff by making public to the plaintiff and others a writing * * *" etc.

Defendant's motion for summary judgment alleged that the letter of April 16, 1958 (which allegedly stated that plaintiff "Brown ships loads of cattle which are always or usually misrepresented or over-described") was "published in Kansas City, Missouri, on April 17, 1958 and (that) any cause of action therein for libel was barred by the two year statute of limitations of Missouri".

After defendant's motion for summary judgment had been filed, we issued a pretrial order requiring plaintiff to either admit the factual allegations in defendant's motion or to stipulate with defendant in regard to the essential facts necessary for determination of the statute of limitations question in order that any genuine issues of fact within the meaning of Rule 56 of the Rules of Civil Procedure be removed from the case. Plaintiff elected to file admissions. From plaintiff's admissions and defendant's motions it is clear that there is no genuine issue about any of the following facts:

1. That the letter of April 16, 1958 "is the letter of which he (plaintiff) is complaining in this action".

2. That the letter of April 16, 1958 was stamped "received" by the Santa Fe at Kansas City, Missouri, on April 17, 1958. (Plaintiff, as will be noted, contends that neither that fact nor any other evidence proves a "publication" of the alleged libel.)

3. That plaintiff did not actually see or have any knowledge of the letter until sometime in November, 1959.

4. That plaintiff's action was not commenced until February 14, 1961; a date more than two years after April, 1958—and a date less than two years after November, 1959.

As could be anticipated, defendant contends that "the statute was not tolled by the fact that plaintiff did not know of the Mueller letter". In reply, plaintiff concedes that "whether or not there was a 'publication' of Mueller's letter on the date claimed by the defendant is a question of law", but he contends that "in Missouri, proof of publication of libelous matter requires (1) a showing that defendant was aware that the matter was or probably might be libelous; (2) that defendant delivered, or caused to be delivered, the libelous matter to some third person; and (3) *that the third person read or saw the libelous matter and understood its contents*" (emphasis ours).

Plaintiff further concedes that there are no genuine issues concerning the first two requirements, but in regard to the

834

third, he argues that "there is an absolute void * * * that a third party read or understood the letter and understood its contents on April 17, 1958". Plaintiff admits that the general livestock agent of the Santa Fe wrote the Rock Island on April 10, 1958 asking for information about the cattle involved in plaintiff's claim against the Santa Fe. He also admits that on May 26, 1958, a date after the Mueller letter of April 16, 1958 had been marked "received"; that the assistant general livestock agent of the Santa Fe denied plaintiff's claim in writing. But, plaintiff insists that "the third essential fact element necessary to prove publication on the date claimed by defendant under Missouri law is both absent and at issue", and that "absent sufficient proof, there was no publication on April 17, 1958".

We do not think that the Missouri cases require what plaintiff refers to as a third essential fact element. Of course, there is general language in Becker v. Brinkop, St.L.1935, 230 Mo.App. 871, 78 S.W.2d 538, 542, to the effect that if the third person to whom the libelous matter was delivered "never read it nor heard it read, and never understood it, the reputation of the plaintiff could not be said to have been injured". But that case actually held that defendant's argument that "the term 'published' is a term of art, and has accepted meaning in the law" was not a tenable argument.

The annotation entitled " 'Publication' of Libel for Purposes of Statute of Limitations", 1 A.L.R.2d 384, 385, correctly states that "it is almost axiomatic that limitations begin to run against a cause of action for libel from the time of the publication of the allegedly libelous matter". The "perplexing" question always relates "to what constitutes a 'publication' within the meaning of this principle". But perplexity has been introduced into a relatively simple concept by reason of the development of mass publication of metropolitan newspapers and of national magazines. Again, as noted in the annotation on page 389, "it is obvious that the process of printing and circulating modern newspapers and magazines may produce a great variety of specific factual situations having legal repercussions".

But in this case we are not required to struggle with the relatively recent development of the so-called "single publication" rule, as were the federal courts in Hartmann v. Time, Inc., 3 Cir., 1948, 166 F.2d 127, 1 A.L.R.2d 370, cert. den. 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763. Only a private letter is here involved; not a newspaper or a magazine. And in such a factual situation, still again, as pointed out in the annotation, page 389, "with respect to * * * private writings such as letters the factual situations relating to their writing, on the one hand, and their communication to others, on the other, are far less complicated as regards newspapers and magazines, and the courts have experienced relatively little difficulty in answering the few questions which have been presented to them involving the problem of 'publication' of such writings for purposes of the limitation of actions of libel based thereon".

Certainly it is true that the Missouri cases have not experienced any difficulty in regard to factual situations not dissimilar to that presented by this case. Much of the Missouri law is built on quotations from and application of principles stated in Corpus Juris. In Harbison v. Chicago, R. I. & P. Ry. Co., 1931, 327 Mo. 440, 37 S.W.2d 609, 610, 79 A.L.R. 1, for example, Corpus Juris is quoted to the effect that " 'Publication' in the law of defamation is the communication of defamatory matter to a third person." In McDonald v. R. L. Polk & Co., 1940, 346 Mo. 615, 142 S.W.2d 635, 638, the Supreme Court of Missouri, in similar fashion stated: "Corpus Juris defines publication, in the law of defamation, as 'the communication of defamatory matter to a third person.' 36 C.J. p. 1223, Sec. 133." And also see Lonergan v. Love, St.L.1941, 235 Mo.App. 1066, 150 S.W.2d 534, 537, where the same section of Corpus Juris was quoted and relied upon.

■ In light of these cases, it would not be unexpected if the Missouri courts would accept Corpus Juris Secundum as present authority to be used in the formulation of their rules of decision in a case factually similar to this. In Section 156 of that work entitled "Time to Sue and Limitations" of the section on Libel and Slander, it is stated at page 240 of Volume 53: "The fact that the person defamed had no knowledge of the defamation until shortly before he brought action is of no consequence with respect to the question whether the action is barred by limitations; * * * ".

And even much closer to plaintiff's factual argument in this case is Bedell v. Richardson Lubricating Co., Mo.App., K.C.1920, 226 S.W. 653. The defendant there attacked the jurisdiction of the trial court on the ground that no publication had been established in the county in which the action was tried. In ruling that there was no merit in the argument, the Kansas City Court of Appeals held on page 656 of 226 S.W. that "the petition shows that the libelous letter was received by the defendant" in the trial county. More important for this case, that court specifically held that: "As a publication of the libel may be made by delivering the writing to the party libeled, the petition does not fail to state a cause of action for the reason that it does not show that the writing was read by a third person".

■ In our determination of the state of the applicable Missouri law we can neither overlook nor ignore Barnard & Wife v. Boulware, 5 Mo. 454 (1838), merely because that case was decided by the Supreme Court over six score years ago. The Missouri statute of limitations for defamation was then only one year. The case was before the Supreme Court of Missouri on plaintiff's appeal from the trial court's refusal to set aside plaintiff's non-suit below. In affirming, the Supreme Court held:

"The statute provides that all actions for words spoken, shall be commenced within one year after the cause of action accrued and not after. It is an abuse of language to pretend that the cause of action did not accrue till the plaintiffs were informed that words had been spoken. * * * it does not seem probable that the law-making power should intend to strain language so far as to intend that the time when the right of action accrued, was the time when the plaintiff might come to the knowledge of the speaking of slanderous words. A proper command over the tongue is, too, so rarely found, that a moralist would rather be inclined to believe that the legislative body, even were the language of the act ambiguous, intended to reward with impunity the utterer of a slander, who had been so prudent or so fortunate as to keep it a secret from the injured person for the space of one year."

Our pre-trial order was designed to eliminate any genuine issues of fact. We thought plaintiff's acceptance of the option to file admissions was designed to obtain that end. And while we think plaintiff's admissions did accomplish that purpose, we note that in his suggestions in opposition to defendant's motion plaintiff does contend relief cannot properly be granted defendant under Rule 56 of the Rules of Civil Procedure in that there is no evidence or admission "that a third person read or saw the letter". We think that what we have already said in regard to the absence of any legal support for plaintiff's argument on the substantive law is sufficient answer for plaintiff's second contention. In order, however, that a second answer be made, we direct attention to the application of Rule 56 to the infinitely more complicated factual situation involved in Hartmann v. Time, Inc., supra.

In that case, Judge Biggs noted that "we are aware that the plaintiff makes the argument that the defendant's affidavits do not show that there was a reading of the accused material prior to January 17, and that since there is no proof of publication in the legal sense prior to

that date, the motion for summary judgment pursuant to Rule 56 should not have been granted." In disposing of this argument, the Court of Appeals for the Third Circuit held:

"We are not willing to dispose of the motion on such a narrow ground. We cannot believe, in view of the great number of magazines which comprised the issue, that 'Life' dated January 17 was not read by persons not privileged within the two or three days which followed its very widespread distribution. To hold otherwise would be totally unrealistic and would inflict a wooden and a senseless interpretation on Rule 56."

■ In light of the undisputed facts concerning the "received" stamp dated April 17, 1958, that appears on the face of the letter and the correspondence that both preceded and followed that letter, we believe it unrealistic to believe that there is any genuine issue of fact that would preclude the application of Rule 56 to this case. Such an application would, to use Judge Biggs' language, "inflict a wooden and a senseless interpretation on Rule 56".

If, however, the plaintiff is still sufficiently convinced to the contrary, we add that we will entertain a motion to set aside this memorandum and order, that plaintiff may wish to file within five (5) days of this memorandum and order, provided plaintiff attach to that motion appropriate affidavits concerning the evidence plaintiff would adduce to prove that no one read the letter on April 17, 1958. Defendant may, of course, in the event plaintiff files a motion and affidavits, file affidavits in opposition.

■■ Plaintiff's final argument contends that the two year statute for defamation provided in Section 516.140 RS

Mo1959, V.A.M.S., did not commence to run on April 17, 1958, even if that date be assumed to be the date of publication, but that "plaintiff's cause of action accrued and the statute commenced to run when plaintiff sustained damage as a result of the libel and his damage was capable of ascertainment", within the meaning of Section 516.100 RSMo 1959, V.A.M.S. Plaintiff's argument overlooks the essential nature of plaintiff's damage in an action for defamation.[1]

Lonergan v. Love, supra, quoting Corpus Juris with approval, held that "the basis of an action for defamation is damages for injury to character in the opinion of other men, in order to render defamation of any kind actionable". That damage was ascertainable after the publication on April 17, 1958 and the statute then commenced to run. See Rippe v. Sutter, Sup.Ct.1956, 292 S.W.2d 86, 90, and cases there cited. We rule the point against the plaintiff.

■ It should not be overlooked in this case that if the date of publication could be said to have been in November of 1959, it is apparent that plaintiff had several months within which he could have filed his action. Barnard & Wife v. Boulware, supra, reflects the necessity of prompt action on the part of one who believes he has a cause of action for defamation under Missouri law. Plaintiff, on the undisputed facts, did not act quick enough and Section 516.100 can not be said to excuse him.

For the reasons stated, defendant's motion for summary judgment should be and it is hereby sustained and plaintiff's petition is ordered dismissed with prejudice, subject only to the possible motion that plaintiff may elect to file as above indicated.

It is so ordered.

1. Plaintiff's misconception of the nature of plaintiff's damage is also reflected in that portion of his petition that alleged that defendant's letter tended to "provoke him to wrath". It is not the plaintiff's reaction that is important. It is what other people think about plaintiff because of the publication. One can call another anything without becoming liable in tort, provided he does so out of the hearing of third persons. See Section 577 of the Restatement of Torts and particularly Illustration 1 under Comment B, page 193.