Frank N. SMITH, Jr., Appellant,

v.

Joyce Sanders SMITH, Respondent,

and

Dwight Elias, Respondent.

No. WD 54511.

Missouri Court of Appeals,
Western District.

Dec. 1, 1998.

As Modified March 2, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 1999.

Robert Calbi, Kansas City, MO, for appellant.

Steven K. Wickersham, Kansas City, MO, for Respondent Joyce Smith.

Kay Madden, Kansas City, MO, for Respondent Dwight Elias.

Before ELLIS, P.J., LOWENSTEIN and RIEDERER, JJ.

RIEDERER, J.

Frank N. Smith Jr. appeals from the trial court's judgment dismissing with prejudice Joyce Sanders Smith's petition for declaration of paternity and from the trial court's judgment of dissolution finding that he is the father of Kashen Smith and ordering him to pay child support. We affirm.

## Facts

Frank N. Smith, Jr., Appellant, and Joyce Sanders Smith, Respondent, were married on August 27, 1977. By April 1, 1978, they had separated and were not living as husband and wife. Respondent has two children, Frank Smith born January 18, 1978, and Kashen Smith, born June 22, 1980. When the parties separated in 1978, Appellant left the Kansas City area and did not have contact with Respondent again until 1990 or 1991. Appellant does not contest that he is the father of Frank Smith. However, Appellant denies that he is the father of Kashen Smith. Appellant claims he did not know of the existence of Kashen until he returned to Kansas City, Missouri in 1990.

After Appellant and Respondent separated in 1978, Respondent had sexual relations with Dwight Elias. Kashen Smith was born to Respondent on June 22, 1980. In June of 1988, the State entered an administrative default order which ordered Appellant to pay child support for both Kashen and Frank Smith. Appellant claims he received no notice of the administrative proceedings, and was not aware of the proceedings until 1990. Notice had been mailed to an old address and was not forwarded. Although Appellant admits he had tax refunds withheld to pay support, he assumed that it was for Frank Smith. There is no evidence in the record that Appellant ever knew of the 1988 administrative proceedings.

On December 29, 1995, Appellant filed a petition for dissolution of marriage, in which he denied being the father of Kashen. Respondent filed an answer and cross-petition for dissolution of the marriage on February 15, 1996, in which Respondent admitted that Appellant was not the biological father of Kashen. On February 17, 1996, Respondent filed an application for leave to file a third party petition, to add Dwight Elias as a third-party defendant. On February 28, 1996, Respondent, as Kashen's next friend and individually, filed a third party petition for declaration of paternity and order of custody and support, in which Respondent claims Dwight Elias is Kashen's father. On April 1, 1996, Elias filed his answer to Respondent's petition for declaration of paternity, in which he denied being Kashen's father. On September 2, 1996, Respondent filed a motion for blood tests to determine the paternity of Kashen. On September 28, 1996, Elias filed suggestions in opposition to Respondent's motion for blood tests and a motion to dismiss Respondent's petition for declaration of paternity. On October 16, 1996, Elias filed supplemental suggestions in opposition and motion to dismiss in which he argued that Respondent's action to establish paternity was time-barred and precluded by the doctrine of res judicata. On February 19, 1997, a hearing was held concerning the motion for blood tests and Elias's motion to dismiss Respondent's petition for declaration of paternity. On March 25, 1997, the court sustained Elias's motion to dismiss and "ordered that plaintiff's Petition for Declaration of Paternity is dismissed with prejudice." Finally, on April 29, 1997, a hearing was held on the dissolution of marriage. On May 21, 1997, the trial court issued its judgment and decree of dissolution. The trial court found that "the minor child Kashen S. Smith . . . to be born of the marriage of the parties in that Petitioner was determined to be the father of the child in a prior judicial proceeding in Jackson County, Missouri bearing the case number DR88–4867." The court also or-

dered Appellant to pay support for Kashen. This appeal ensued.

Appellant asserts four points on appeal:

I. The trial court erred in dismissing Respondent Joyce Sanders Smith's petition for declaration of paternity in that the cause of action was not barred because the statute of limitations under the Uniform Parentage Act had not expired.

II. (a) & (b) The trial court erred in holding that Appellant was the father of Kashen Smith and ordering him to pay child support for Kashen Smith when the testimony of the parties, including Respondent Joyce Sanders Smith's declaration that Appellant was not the father of Kashen Smith, overcame the rebuttable presumption under § 210.822.1(1) that Appellant was the father of Kashen Smith

III. The trial court's application of the pre–1993 version of 210.826.1 was error in that it violated Appellant's equal protection and due process rights.

IV. The trial court erred in holding that an administrative default order finding Appellant to be the presumed father of Kashen Smith had a collateral estoppel effect in the dissolution proceedings when the determination of the administrative body was void.

## Standard of Review

The judgment of the trial court should be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Shadwick v. Byrd*, 867 S.W.2d 231, 235 (Mo.App.1993) (citing, *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

## I.

■ Appellant claims in his first point that the trial court erred in dismissing Respondent Joyce Sanders Smith's petition for declaration of paternity with prejudice because the applicable statute of limitations had not expired.

The statute of limitations at issue is § 210.826.1.[1] The current version of § 210.826.1 provides:

A child, his natural mother, a man presumed to be his father under subdivision (1), (2), or (3) of subsection 1 of section 210.822, a man alleging himself to be a father or the division of child support enforcement **may bring an action at any time** for the purpose of declaring the existence or nonexistence of the father and child relationship presumed under subdivision (1), (2), or (3) of subsection 1 of section 210.822. (Emphasis added).

Prior to its 1993 amendment former subdivision 1(2) of § 210.826.1 stated:

For the purpose of declaring the nonexistence of the father and child relationship presumed under subdivision (1), (2), or (3) of sub-section 1 of section 210.822 only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, **but in no event later than five years after the child's birth.** (Emphasis added).

Appellant argues in a roundabout manner that the current version of the statute applies. However, Appellant concedes that if the pre–1993 version of the statute applies, then the action would be barred, since the child was sixteen years old when the action was filed.

The Missouri Supreme Court has recently addressed this issue in *W.B. v. M.G.R.*, 955 S.W.2d 935 (Mo. banc 1997). In *W.B.*, the Respondent and the mother were married in 1976. During the marriage, she gave birth to three children, including the daughter at issue in the case, who was born on June 15, 1984. When the parents of the children divorced in 1984, the trial court found that the three children were born of the marriage, custody was awarded to mother, and Respondent was ordered to pay child support. Mother and Respondent remarried in 1985. When the second marriage was dissolved, the trial court found once again that the children were born of the marriage, awarded custody to the mother, and ordered Respondent to pay child support. Mother subsequently married Appellant in 1992. In 1993, Appel-

1. All statutory references are to RSMo.1994, unless otherwise noted.

lant filed a petition seeking to have himself declared Daughter's father. The trial court dismissed the action with prejudice based on the pre–1993 five year statute of limitations contained in § 210.826.1(2). Our Supreme Court held that the current version of § 210.826.1 could not be applied retroactively and that as of the daughter's fifth birthday, June 15, 1989, Respondent, "acquired, under the law as it then existed, a vested right to be free from a suit to challenge his paternity of daughter." *Id.* at 937.

Appellant attempts to distinguish his action from that of the *W.B.* case. Appellant claims that the rationale for § 210.826 is to encourage the creation and maintenance of a relationship between a child and father, and that this rationale is not pertinent in his case. Appellant argues that he has never seen the child and does not have an existing paternal relationship to protect. Appellant's argument is taken out of context. In *W.B.*, the court stated that the statute did not violate equal protection. *Id.* at 940. The court found that the State had a legitimate state interest in protecting paternal relationships and that this interest is protected by allowing paternity to be challenged only for five years. *Id.* at 938. The court in *W.B.* did not assert that § 210.826 applies only if there is an existing parental relationship to protect.

Since *W.B.*, this court has addressed this very issue in two decisions. In *State ex rel. Umelu v. Edwards,* 963 S.W.2d 670 (Mo.App. 1997), the State's Division of Child Support Enforcement and the mother of the minor child appealed the trial court's dismissal of their paternity action. In *Edwards,* the mother and husband were married in May of 1978. In December of that same year, the couple separated[2]. In the summer of 1979, Mother began having sexual relations with Michael Edwards. In April of 1981, Mother gave birth to C.J.U. In May of 1994, the State and the Mother of the child filed a paternity action, naming Michael Edwards as a defendant. Edwards filed a motion to dismiss the petition claiming that the petitioners had failed to state a claim upon which relief

could be granted, and that the action was barred by § 210.826.1(2). The trial court sustained Edward's motion. In *Edwards,* this court affirmed the trial court's dismissal of the paternity action. *Id.* at 673. The court cited *W.B.* as dispositive, and stated that the 1993 amendment of the statute could not be applied retrospectively. *Id.* at 672. This court held that the expiration of the five-year statute of limitations created a vested right in favor of husband to be free from suits challenging his paternity of C.J.U., and it likewise, created a vested right in favor of Edwards to be free from suits designed to establish his paternity. *Id.*

In *State ex rel. Lucas v. Wilson,* 963 S.W.2d 408 (Mo.App.1998), the State appealed the dismissal of its petition to declare paternity and procure child support on behalf of Quinton Lucas. In August of 1984, Quinton was born to Mother. At that time, Mother was married to Ricardo Lucas. In 1982 or 1983, he started an eighteen-year prison term and it appears that Lucas was in prison at the time Quinton was conceived. The marriage was dissolved in November of 1990. In May of 1995, the State filed a petition on behalf of Quinton for a declaration of paternity and for support, which alleged that either Lucas or Thomas Wilson was the father. Blood tests excluded Lucas as the father and revealed that Wilson's probability of paternity was nearly 100%. In September of 1996, when the State and Wilson were granted leave to amend their pleadings, Wilson filed a motion to dismiss based on the expiration of the limitations period in § 210.826.1(2), and the unconstitutionality of the retrospective application of the 1993 amendment to the statute. The trial court agreed and dismissed the claim with prejudice. The court in *Wilson,* 963 S.W.2d 408 at 413 affirmed the trial court and held:

On the face of the statute, the five-year limitations period applies to actions brought for the purpose of declaring the nonexistence of the relationship. § 210.826.1(2) RSMo Supp.1988. Where the child has a presumed father, any action

---

2. The couple were still married at the time of trial. However, mother had had no contact with her husband since they separated.

to establish the paternity of another man is necessarily an action brought for the purpose of declaring the nonexistence of the presumed paternity, and the five-year limitations period would seem to apply.

The law is clear that the 1993 version of § 210.826.1 does not apply to cases wherein the child was born more than five years before the amendment. Therefore, in this case the action was time barred. Kashen was born on June 22, 1980. The petition seeking declaration of paternity was filed on February, 28, 1996. Approximately sixteen years had elapsed, which is beyond the five-year requirement of § 210.826.1(2). Point I is denied.

## II.

■ Appellant argues in his second point that the trial court erred by determining in its judgment of dissolution that he was the father of Kashen Smith and responsible to pay child support, when the testimony of the parties, including that of Respondent, in which she states that Appellant is not the father, overcame the rebuttable presumption created by § 210.822.1(1).[3]

■ Paternity may be determined as an issue in a dissolution action. *L.M.K. v. D.E.K.*, 685 S.W.2d 614, 616 (Mo.App.1985). However, § 210.826.1(2) of the Uniform Parentage Act (UPA) provides the statute of limitations on paternity actions. Therefore, Appellant was bound by the pre –1993 version of § 210.826.1(2). Under the pre–1993 version of § 210.826.1(2), Appellant had five years after Kashen's birth to bring an action declaring the nonexistence of the father and child relationship presumed under § 210.822.1(1). Kashen was born on June 22, 1980. Therefore, the presumption that Appellant is Kashen's father under § 210.822.1(1) cannot be rebutted because the claim of rebuttal is time barred by the pre–1993 version of § 210.826.1(2). Point II is denied.

## III.

■ Appellant contends in his third point that the trial court's application of the pre–1993 version of § 210.826.1 denied him equal protection and his right to due process.

■ First, Appellant claims his due process rights have been violated because he is being forced to pay child support, due to his status as a "father." Appellant correctly states that there was no due process violation in applying the pre-1993 version of § 210.826 in *W.B.* because a constitutionally protected liberty interest was not implicated. 955 S.W.2d at 938. However, although Appellant argues that his case is factually distinguishable from *W.B.* because he claims he is not the father of the child, and although Appellant further argues that his due process rights are violated because he is being forced to pay child support for Kashen and has had money due to him garnished because of his status as a "father," nevertheless, Appellant does not cite any authority supporting these arguments. "Rule 84.04(d) requires that an Appellant provide appropriate citation to authority in support of his contentions." *Martin v. McNeill*, 957 S.W.2d 360, 365 (Mo.App. 1997) (citing, *Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978)). If no authority exists on the issue, an explanation for the absence of authority is required. *Id.* at 366. If no explanation is given, we may consider the point to be abandoned. *Id.*

■ Second, Appellant claims his inability to maintain a suit rebutting his presumed paternity violates equal protection. Appellant cites to *W.B.* in which the Missouri Supreme Court determined that § 210.826 supports the legitimate state interest of protecting paternal relationships and does not violate equal protection. 955 S.W.2d at 938. Appellant claims that the facts here are distinguishable because he has never had a father child relationship with the child, therefore, there is no paternal relationship to protect. Appellant argues that based on this rationale, to deny the parties the opportunity to prove paternity is a violation of Appellant's equal protection rights. This claim is also without merit because Appel-

3. "1. A man shall be presumed to be the natural father of a child if: (1) He and the child's natural mother are or have been married to each other and the child is born during the marriage ..."

lant did have an opportunity to challenge the paternity of Kashen, but failed to do so within the time limit imposed by § 210.826, which, Appellant concedes, supports a legitimate state interest. Therefore, it does not violate equal protection. *Id.*

Point III is denied.

## IV.

■ Appellant claims in his fourth point that the trial court erred in holding that the issue of paternity had been determined by the default administrative order in Jackson County case number DR88–4867, and that collateral estoppel precluded the trial court from considering the issue of paternity.

■ Collateral estoppel bars relitigation of issues that have been determined in a prior proceeding. *State ex. rel. Malan v. Huesemann,* 942 S.W.2d 424, 429 (Mo.App. 1997). To determine whether collateral estoppel applies, the court must examine four factors: 1) whether the issue decided in the proper adjudication was identical to the issue presented in the present action; 2) whether the prior adjudication resulted in a judgment on the merits; 3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and 4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *State of Missouri ex rel. Division of Family Services v. White,* 952 S.W.2d 716, 718 (Mo.App.1997) (citations omitted).

Appellant argues that collateral estoppel does not apply when the judgment is void, and that the judgment in DR88–4867 was void because the court in DR88–4867 never had personal jurisdiction over him. Appellant testified at the dissolution of marriage hearing that he had never received notice and never received service of process in the DR88–4867 administrative case. However, we do not reach this issue, because we find that collateral estoppel does not apply.

Even if Appellant were served in the DR88–4867 administrative case, we still must determine whether the issue in that case was the same issue to be determined in the disso-

lution of marriage case before us. The issues are not the same. The issue in the dissolution case was whether Appellant is in fact the father of Kashen Smith. The issue in the administrative case was whether Appellant was the presumed father of Kashen Smith. *Id.* In *White,* "[t]he sole issue before the administrative hearing officer … was whether evidence was presented showing [Appellant] was the presumed father. Section 454.485.1." *Id.* The court in *White* held that the Appellant's claim could not be barred on the grounds of collateral estoppel, noting, "… whether [Appellant] was the child's father was never an issue decided by the hearing officer, only whether [Appellant] was the child's presumed father." *Id.*

In our case, it appears that Appellant was a Respondent in an administrative proceeding DR88–4867 under § 454.470. Section 454.485 provides that, "[t]he Director may enter an order establishing paternity of a child in the course of a support proceeding pursuant to sections 454.460 to 454.510 when the man is presumed to be the child's father pursuant to section 210.822 …." Thus, the only issue to be decided by the court in DR88–4867 was whether Appellant was presumed to be the father under § 210.822. The issue of whether Appellant was in fact the natural father of Kashen Smith was never decided by the prior proceeding. Therefore, Appellant was not precluded from raising the issue of paternity in the dissolution by collateral estoppel.

Although we do find that the issue of paternity was not determined in the prior administrative case, and that, therefore, Appellant was not precluded by collateral estoppel from raising the issue of paternity in the dissolution proceeding, we must affirm the judgment of the trial court finding that Appellant is the father of Kashen Smith and ordering him to pay child support for Kashen Smith due to the running of the pre–1993 version of § 210.826.1(2). Point IV. is denied.

### Conclusion

The law is clear that the 1993 version of § 210.826.1 does not apply to cases wherein the child was born more than five years

before the amendment. Therefore, the trial court was correct in dismissing Respondent Joyce Sanders Smith's petition seeking a declaration of paternity for Kashen Smith born June 22, 1980, since the pre–1993 version of § 210.826.1 applied. Although we did find that Appellant was not precluded from raising the issue of paternity in the dissolution proceeding by collateral estoppel, the presumption that Appellant Frank N. Smith, Jr. is Kashen's father under § 210.822.1(1) could not be rebutted by Appellant in the dissolution proceeding. Since the UPA is the exclusive means through which paternity can be determined, Appellant's action was also time-barred by the pre—1993 version of § 210.826.1(2).

Judgment of the trial court is affirmed.

All concur.